Brenard AUSTIN, Minor, by his Next Friend, Brenard Austin, Sr., Appellant,

v.

John T. KESSELRING.

No. 23765.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1970.

Decided Dec. 23, 1970.

Mr. Frederick H. Evans, Washington, D. C., for appellant.

Mr. Anthony E. Grimaldi, Washington, D. C., with whom Messrs. William Clague and Francis C. O'Brien, Washington, D. C., were on the brief, for appellee.

Before WRIGHT and TAMM, Circuit Judges, and MATTHEWS,* Senior District Judge, U.S. District Court for the District of Columbia.

MATTHEWS, Senior District Judge:

This is an action brought to recover damages for personal injuries sustained by Brenard Austin, a minor, as the result of colliding with an automobile operated by the defendant. At the conclusion of the plaintiff's evidence, the court directed a verdict in favor of the defendant on the ground that there was no showing of negligence on his part, and this appeal followed.

The record discloses this: The accident occurred in the 6200 block of Kansas Avenue in Northeast Washington about 47 feet south of the south line of Sheridan Street. The day was clear and cold and the street dry. From curbline to curbline at the place involved Kansas Avenue is 44 feet wide. At the time of the accident, however, cars were parked at the curb on each side of Kansas Avenue, leaving only one lane for traffic headed north and one for southbound traffic.

Initially the defendant was proceeding north along Kansas Avenue at about 25 miles an hour. Intending, upon reaching the intersection of Kansas Avenue and Sheridan Street, to make a right turn onto Sheridan Street, the defendant put on his right directional signal and commenced to slow down. Thereafter at a distance of about 100 feet and seconds before the accident, the defendant saw the minor standing on the west sidewalk of Kansas Avenue. He then gave no indication of a purpose to leave the sidewalk. However, when the car operated by defendant was within 50 or 60 feet of the minor he darted off the sidewalk and began a hard, fast run in a somewhat diagonal course from the west toward the east side of Kansas Avenue.

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

He crossed the lane for southbound traffic and moved into the lane for northbound traffic.

Observing the minor dart off the sidewalk and start his dash across Kansas Avenue, and with his brakes already on, the defendant "hit" his brakes and started to veer off to the right to give the minor more room but there was not enough space due to the curbside parking of other cars. The minor, advancing rapidly toward the defendant's vehicle but looking in another diection, ran into the left front side of the vehicle, cracking the bone in his left leg, and falling beside the car.

The defendant laid down skid marks of 32 feet before his car came to rest less than half a car length after the collision. The defendant was the only eyewitness called by the plaintiff and he testified that he "was almost at a dead stop when [the minor] hit [the car]." The minor testified in his own behalf. He gave his age as 12 years at the time of the accident.[1] He stated that prior to the accident he looked in both directions but did not see the car operated by the defendant. The minor's home was on the east side of Kansas Avenue. He had gone to the west side thereof seeking to have a friend join him in watching a television show then in progress in his home. Not locating his friend, the minor at the time of the collision was rushing home to resume his television viewing.

An officer of the Traffic Division, Metropolitan Police, was asked the following hypothetical question by plaintiff's counsel:

"If this defendant were travelling between 20 and 25 miles per hour and he noted the danger of the pedestrian approximately 60 feet away, at that rate of speed and considering this defendant with his reaction time, in how many feet would it have taken the defendant to have stopped his vehicle, bringing it to a complete stop?"

To this hypothetical question the witness responded: "Approximately 57 feet." Of course, the purpose of the hypothetical question was to show that the defendant could have stopped his car in 57 feet, thus avoiding the accident. While the assumption in the hypothetical question was that when the minor darted off the sidewalk the distance between the minor and the car of defendant was "approximately 60 feet," in the only testimony as to this distance it was *estimated* at 50 feet *or* 60 feet. Obviously, if the distance was 50 feet the defendant could not have avoided the accident when he needed "approximately 57 feet" within which to stop his car. If the distance was "approximately 60 feet", then in the nature of things, this distance was shortened in some degree by the minor himself when he ran on a diagonal course toward the approaching car.

In granting the motion for a directed verdict for the defendant, the trial judge indicated that construing the evidence most favorably to the minor and giving him the benefit of all reasonable inferences

"there just isn't one scintilla of evidence of negligence on the part of this defendant.

" * * * But you cannot take an estimated distance given by the driver, or an estimated speed, and hold him to that within two or three feet or within a fraction of a second. Normal people just simply can't judge distances and judge times in that fashion." Tr. p. 95.

" * * * [I]t seems inescapable from the evidence that this man was coming down the street, this defendant in a reasonably prudent and careful manner, and that this young man just suddenly darted out from the curb at full speed and ran into the side of him." Tr. p. 96.

---

1. The minor was referred to as "retarded," and being one year behind his contemporaries in school.

706

" * * * I see nothing about last clear chance in this case * * *." Tr. p. 97.

"At a time when it became apparent that this child was in danger, which is at the time he took off from the curb at full speed, I know of nothing that this defendant could have done to have avoided the accident." *Id.*

We conclude that the trial court was correct in directing a verdict for the defendant.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

A trial court should, of course, grant a motion for a directed verdict whenever under the evidence there are no controverted issues of fact upon which reasonable men could differ. In making this determination, the evidence must be construed most favorably in behalf of the defendant in the motion who must also be given the benefit of all reasonable inferences therefrom.[1] With deference, on the basis of these familiar principles I believe this case should have been allowed to go to the jury.

We have here a typical situation in which a child runs from a position of safety into the path of an oncoming car. Rule 54 of the Traffic Rules and Regulations of the District of Columbia speaks to just such a case:

"Notwithstanding the provisions of this Article and of Article III, Sec. II every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and *shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child* or any confused or incapacitated person upon a roadway."

(Emphasis added.) According to his own testimony, appellee saw the Austin child standing on the curb at the intersection when his car was 100 feet away; at 50 to 60 feet the child darted out into the street looking away from. appellee's car. Yet there is no indication that appellee at any time blew his horn to alert the child as required by Rule 54. Violation of this traffic rule, of course, is itself negligence sufficient to take the case to the jury.

But there is more. The police officer who investigated the accident testified that the speed limit in the area was 25 miles per hour, and that a car going 25 miles per hour could be brought to a complete stop in 57 feet. Yet appellee told the officer at the scene of the accident that his car was moving at 10 miles per hour when the child was hit. Obviously on the basis of the officer's testimony, taken with appellee's testimony that he was 50 to 60 feet away when he saw the child run into the intersection, the jury could have concluded that appellee was exceeding the speed limit of 25 miles per hour when the emergency arose. Indeed, appellee admitted that he did not know whether his speed at the time was greater than 25 miles per hour.[2] Excessive speed also is negligence sufficient to take the case to the jury if proximate to the accident. And inability to stop in time was certainly at least one of the proximate causes of this accident.

The trial court realized that the above testimony, if credited, would result in a jury verdict for appellant. Rather than send the case to the jury, the court decided to judge the credibility of the witnesses itself on the crucial factual issues in this case—the issues of time and

1. The majority apparently finds as a fact that the child ran into the side of appellee's car. Appellee so testified. But the physical evidence showed that, at one point at least, the child's body struck the windshield. On the basis of this evidence, the jury might well have found that the

child was struck initially not by the side, but by the front, of the car.

2. Appellee's testimony reads:
Q. Your speed, could it have been higher than 25?
A. I really don't know.

distance [3]—and direct the verdict for the defendant-appellee. In giving its reasons for directing the verdict, the trial court stated:

"The Court has found long ago that most people's estimate[s] of distances and time are something that just do not mean anything. I have had people come in here and testify that they stopped and were waiting at the light three minutes when I think about the longest cycle of light in the District is about 55 seconds. And the distance between 100 feet and 200 feet, they haven't any more idea of that than flying to the moon when they estimate."

The trial court further stated: "Normal people just simply can't judge distances and judge times in that fashion." I assume that includes judges. At least the normal people here were on the scene of this accident. They provide the best evidence available as to what took place. And under our law it is the function of the jury to judge their credibility.

I respectfully dissent.

---

3. In this connection it is interesting that the only witnesses who testified on the issues of time and distance were appellee and the investigating officer.